Good morning, Your Honors. I'm Stephen Shapiro. I represent the plaintiff appellant, Hana Financial, and I would request a reserve five minutes for rebuttal. Okay. That's your total amount of time, so keep an eye on the clock there. I'll try and help you. I'm sorry, the total? Total amount of time is on the clock in front of you, and that includes rebuttal time. Thank you, Your Honor. All right. Your Honors, the issue of tacking was first raised in a motion to eliminate, filed by In that motion, we argued that Hana Financial's evidence of earlier advertising was legally irrelevant because advertisements for Hana Overseas Korean Club could not be used to tack Hana Bank Well, let me ask you on the tacking issue, because I think that, you know, obviously it's a close issue, but it went to a jury, right? That's correct, Your Honor. Basically, to prevail on that tacking issue, it would seem to me that we would have to say as a matter of law that the evidence wasn't sufficient. That's correct, Your Honor. Because, you know, given that the bank was marketing its Overseas Korean Club services to Korean-speaking Americans and included its name and logo in Korean next to the Overseas Korean Club name in English, why couldn't the jury reasonably conclude that the ordinary purchasers had the same continuing commercial impression of the marks? Your Honor I mean, that's what concerns me here, because it went to a jury. Yes, Your Honor. And you're correct. We have to establish as a matter of law that only one reasonable conclusion could be reached. But the actual marks at issue were, was the Hana Overseas Korean Club. That was the only place where the word Hana appears in English. Is that the case in Korean? In Korean. In Korean it says Hana Bank. Your Honor, actually it said, in Korean it said One Bank. Hana, it means one in Korean. And one in Korean is Hana. So if we had First National Bank of Chicago, no longer existing, and it was translated into another language, you'd turn first into one. I mean, in Korean, Hana Bank, One Bank you're calling it. They call it One Bank in Korea, right? That's correct, Your Honor. The words in Korea are the words in Korean used by the bank to indicate itself. So why are you telling me it's One Bank? Isn't it Hana Bank? Your Honor, in Korea it's One Bank. That's fine. Well, in Korea, what's your client's name? One? I'm not, actually, that is... If you're trying to draw a distinction between Hana and One, why wouldn't your client's name become One as well? Well, Your Honor, our client is an American company doing business in America. And his customers are Korean-Americans, perhaps? They're people of all nationalities. They do have Korean-American customers, but there are other customers as well. The mark in English was Hana Overseas Korean Club. There was a use of a Korean-language name of the bank, which meant One Bank, N-Hang being Bank. Sounds different. It looks different. For tacking, the marks have to be virtually identical. And here, sort of like the logos are here on the sole bank, that would get to the other issue. Well, the jury's hearing all of it, I presume. And frankly, it suggests to me that your client's trying to copy somebody. I wouldn't be surprised. If I'm presiding over this trial, I sort of expect the verdict that came back. Makes it hard for me to see now how there wasn't sufficient evidence to support the verdict. Well, Your Honor, with respect to the tacking, it's simply a legal issue. Well, okay. But when you have a jury trial, you have to look to were the instructions correct, which I think that we have to say that they were correct here. The jury heard everything. It's not a situation that they didn't hear what the relationship with these people were, how it was all. So you basically have to say the jury was wrong as a matter of law. So what's your best case on that? Well, the best case is this Court's decision in the O'Neill case, which we've listed in numerous cases. But it basically said as a matter of law, in that case, the tacking could not apply. That when there is a material difference and the marks aren't virtually identical, there can be no tacking. It's an extremely strict circuit. That was a summary judgment case, was it not? Actually, I think it was actually a motion to dismiss. Oh, okay. So without even all the discovery that you'd have on summary judgment. That was one of the issues in the case. But yes, in fact, it never even got to that far. But does it make a difference that, as Judge Callahan suggested, here we have a full trial on the merits where the jury has heard whatever evidence would be relevant to that determination? Properly instructed on what law to apply? I don't think it changes the issue. The issue is still whether or not, as a matter of law, the jury could reach that decision or a reasonable person could reach that decision. 12 people, right? It was fewer, but yes, there were people. Was it a unanimous verdict? It was a unanimous verdict. But if you go back to the trial, we actually didn't even know if we could raise tacking until 30 minutes before the closing argument. That's not part of our brief. It was something where Judge Anderson, throughout, kept saying, in your complaint, you mentioned the Hahnemarks, so I don't see how you're going to bring this up. Well, I didn't say 30 minutes before argument. I thought, didn't he adopt in substance the tacking instruction that you proposed? The difference being is we had the virtually identical language. Well, and that, I hope, was submitted more than 30 minutes before argument to the court. Oh, our jury instructions were submitted well in advance of trial. Well, how can you suggest to us, then, that you didn't know until 30 minutes before argument that tacking was an issue if you submitted a jury verdict? Whether or not we were able to present that issue is what I was saying. So, you know, throughout the trial, the jury was hearing Hahnemark, Hahnemark, and we would object and say, really, there's two different marks here, and the judges say, let it go. So, you know, a jury is one thing, and I'm not even sure they quite understood the instruction, but the basic issue in every time... You're not challenging the instruction, are you? I'm not, Your Honor. Okay. The only thing I'm saying is that when you have a jury... We wanted to argue tacking, right? I beg your pardon? We wanted to argue tacking. Absolutely, Your Honor. So, and you had been trying to do that, but you... So, it's not like... And you had a motion in limine on it, so it's not like you were unprepared to go forward with that. No, Your Honor, we were not unprepared. It was just a question, and it was to your advantage that you got to argue tacking. You might have a better argument here if the court hadn't allowed you to argue tacking, and then... That's correct, Your Honor. But as in all cases where something goes to the jury, sometimes, as a matter of law, it should never have gotten to the jury, and that was one of the things we argued in our motion in limine. Mr. Shapiro, you're running... In my book, you're running dangerously close to the line of invited error with that argument because if you submitted the instruction, if you asked the court from the beginning of the trial to litigate that question, how can you now say it was error to permit the jury to do that? I'm not saying that it was error. I'm just saying, as a matter of law, there could be no tacking. Based on the facts that the jury considered, these marks were too different. They were not virtually identical. There were material differences in sound, meaning, appearance, and to apply tacking in this case... And you did raise a Rule 50 motion to that effect... Correct, Your Honor. ...at the close of the evidence. And we did at the close of evidence, and also we incorporated by reference the four pages of legal argument, including the evidence and the legal citations in our motion  and that issue was brought to the court. But they were still just too different. If you look at all the cases that we've cited, it's a very, very narrow circumstance where tacking is permitted. And tacking is a central issue on the other two issues as well, including the unclean hands and the latches. Let's suppose you're right, and I have some sympathy for the position you're arguing, but let's treat the jury verdict as if it was an advisory verdict on that issue to help the court resolve the legal question. What do we do with the fact that the jury apparently thought that they were similar marks? As I mentioned, there is similarity in the sense that you have the word Hanna, but that's where the similarity ends. Right, I mean, that's sort of the anchor for the argument that they can tack. But for instance, the Hanna Bank versus Hanna Overseas Korean Club, there's big material differences. These are not virtually identical marks. And even the Hanna Bank in Korean looks different, appears different, has a different meaning, sounds different. These are, you know, it's very, I think, a very dangerous precedent to say that you can have a tacking in this kind of a situation because I'm a trademark lawyer. For instance, if a client comes to me and says, I have this mark, and we want to use this, I'll say to them, okay, well, where does this come from? Oh, this is a foreign word. This is N-Hong, which means bank in Korean. Well, I'd say, well, you know, the trademark office is going to use the foreign equivalence doctrine. They're going to translate this, and they're going to say, oh, that's just bank. But that's only for purposes of descriptiveness and genericness. Okay, but lawyers and judges sometimes, you know, we interpret what jurors would do, and we decide that. But what they had to decide is whether ordinary purchasers had the, what, quote, same continuing commercial impression of the marks, right? Under the jury instruction, correct.  So why do we as judges and lawyers have a better beat on same continuing commercial impression? It also says there can be no material difference. And this court has also said, which was not in the jury instruction, it must be virtually identical. So there are material differences. They look different, they sound different, they have different meanings. So basically, we have to assume that lawyers and judges know better than the common person on the issue. Well, to be honest, Your Honor, other than the Ninth Circuit, almost every circuit that's considered this issue considers it an issue of law. The Federal Circuit has said it's an issue of law. The Sixth Circuit has said it's an issue of law. Other circuits have said it's an issue of law. The Ninth Circuit in the Quicksilver case indicated it as an issue of fact. I think I've seen one... Which we're bound by, right? I don't know that you're bound, Your Honor, but yes, it is the precedent of this circuit. So we have to deal with what it is. Mr. Shapiro, you wanted to save five minutes, and you're down to three. Thank you, Your Honor. Let's hear from Mr. Vandermosh. Good morning, Your Honor. This may please the Court. Carlo Vandenbos for the Appellee Honovang. Your Honor, I hesitate to speak too much on the issue of tacking because from our perspective it's completely irrelevant, but I will say a few words about it. Well, it does go to the far end of things. If you look at the cases that have had made legal determinations, so... Your Honor, the issue of tacking would only be relevant if our 1994 advertisements only contained reference to the Hana Overseas Korean Club, when in fact those ads referenced Hana Bank nine times. And yes, I'll concede that many of those references were in the Korean language, but it's a fallacy to say that we should translate it as a result to mean one bank. Whether in Korea or the United States, consumers recognize this and pronounce it as Hana. That's the name of the bank. So there's no one anywhere that refers to the bank as one bank. And Your Honor is correct. What matters here is the overall commercial impression that's conveyed by the marks. And the Hana mark in this case, whether it's Hana Bank, Hana, Hana Overseas Korean Club, there is a singular commercial impression that's being conveyed. There's a case that acknowledged, for instance, that American Security and American Security Bank are legal equivalents from a trademark perspective because they do convey the same commercial impression. That's 571 F2nd at 564. The issue of tacking is a question of fact. The one industry case that's been cited, that's 578 F3rd at 1154, clearly makes it an issue of fact. And yes, there was an unambiguous jury instruction that went to the jury and the jury deemed tacking to be irrelevant in this case as is shown by the priority verdict. Well, the HFI has asked us to rule on the trademark priority issue regardless of whether we uphold the district's decision on one of the equitable grounds. What's your position on that? That's an issue that can be reviewed de novo on a substantial evidence standard. But in this case, priority is readily established by a wealth of evidence. The appellant HANA Financial in this case has a priority date of April 1, 1995. The evidence shows that HANA Bank began advertising the U.S. market in July of 1994. Their papers would suggest this was a one-off advertisement, but there's ample testimony that this ad campaign ran throughout the summer of 1994. It appeared in all of the major metropolitan areas with the large Korean American population, Los Angeles, San Francisco, New York, Washington, D.C., and Chicago. And following those advertisements, there was an immediate consumer response. The bank started receiving inquiries about this product. It started receiving applications from U.S. residents. It started signing on residents from the United States as customers. Between 1994 and 2011, the bank signed on more than 11,000 U.S. residents as customers. So from the first advertisements in 1994 to the present date, this has been a success. This has been continuous use and commerce of the HANA brand. Now, the issue of priority was first adjudicated, of course, on summary judgment in 2008, and this court at the time thought there were some issues of fact. They agreed with the appellant, and the appellant saw a jury trial on this issue, and that's precisely what they got. At the end of the jury trial, again, there was a finding of basis for a full defense judgment, latches and unclean hands. Any one of these three basis, whether it's priority, latches or unclean hands, if affirmed would suffice to let the defense judgment stand. If this court agrees with the jury that HANA Bank is indeed the senior trademark user, then you don't have to talk about latches and unclean hands. If somehow this court does find that we have not proven our priority case, then we must still consider latches and unclean hands. Well, the prior Ninth Circuit tacking cases really don't address the issue in the context of the jury verdict, or provide an example of the circumstances under where a jury might properly find tacking. So... The tacking cases tend to be all over the board a little bit. When you look at the marks that issue in those cases, it's very difficult to glean from the marks alone why there was a conclusion that was made. And the reason, I believe, is because all of the cases delve into this consumer impression standard. What does the consumer take away from the brand upon seeing it? Well, I guess then, why isn't consumer survey evidence necessary to establish that ordinary purchasers of the bank services have the same continuing commercial impression of the marks for tacking purposes? I think a survey could be very useful in a tacking inquiry, certainly. And in this case, had tacking really been at issue before the Court, we might have considered it. But it was an eleventh-hour argument. It's one that we contend was completely irrelevant because, again, going back to 1994, there was ample evidence and use of Hanna Bank, not just Hanna Overseas Korean Club. So... you're saying that the District Court gave three grounds that support the judgment for affirmance here, and that any one of them would be enough? Any one, independently, would be enough. That's correct, Your Honor. Which one do you think is the strongest? I like all three of them. But I think priority is clearly a very solid basis because it is supported by ample evidence. It was based solely on the unanimous jury verdict upon consideration of hundreds of pages of documents and testimony from multiple witnesses. The jury's verdict was in line with the prior summary judgment. We've adjudicated this issue several times now with similar results. The equitable defenses, of course, were in the discretion of the Court. The jury issued an advisory verdict on both of them. They agreed with laches. They didn't adopt the unclean hands defense, but the Court thought otherwise. Both of them, to a large extent, relied upon a meeting that took place in 1995 between the chairman of Hanna Bank and the then CEO of Hanna Financial. The two had known each other for a long time. The relationships here seem to have some effect on what would be something the jury heard about it, and you could see how they would factor that in. Absolutely, as well as the credibility of the witnesses based on their testimony. Without a doubt. Your Honor, given our own trademark priority, a very reasonable question to ask is why did we not sue them for infringement, whether on the counterclaims or going back to 1995 when this meeting took place. Might have a laches problem as well. Exactly, Your Honor. Plus there was a personal relationship. Which I'm sure caused equity to stay at hand. That's correct, Your Honor. Precisely. The meeting that took place in 1995 between the two gentlemen was a particularly interesting one. The then CEO of Hanna Financial looked upon the chairman as sort of a big brother figure. He traveled to Korea. This was shortly after he had founded Hanna Financial. He showed the chairman a business card with his new logo and the chairman naturally was surprised. He testified on this point. He said, why are you choosing our name? Why are you using our name? The then CEO, now deceased of Hanna Financial expressed great admiration for this name and said, look, don't worry about it. We're in a different line of business. We are just a factoring company. Our businesses will never overlap. And the chairman of the bank at that point looked the other way. And it wasn't until many years later that this suit arose when the company had a different CEO. Both companies are still doing business here and HFI is still a factoring company and the bank doesn't do factoring. I know HFI is still a factoring company. The bank, by virtue of its own trademark priority, can do whatever it chooses in the financial sector. But it has not chosen to enter that corner of the market yet. Not to my knowledge, Your Honor. There was no evidence on that point. Okay. Anybody have anything else? Thank you. Thank you very much. Mr. Shapiro, you've got just under three minutes. Your Honor, I'd like to just go back to a point that I was making at the end of the argument when I was explaining as a trademark lawyer why it's important that this court find that there was no possible way to have tacking in this case. People come to you with marks. Now what happens if somebody comes to me with a mark? Then what I have to do is search. I have to find out has somebody been using this mark because otherwise my client might spend millions of dollars in developing advertising goodwill only to find out somebody else has priority. But now if you can take a Korean language from a newspaper that is not the same mark, do I now have to go through and have everything? You said it's not the same mark, but isn't that the issue? We come back to the foreign language problem again. It's not like the trademark law is blind to the fact that there are foreign equivalents. That's exactly my point and why the foreign equivalents doctrine should not be applied to this case because it has never been used to expand somebody's trademark rights. It's only been used to limit trademark rights. So what I'm saying is if I have to go and do searches, do I now have to search however many thousands of languages that are out there, have translations of everything to try to find out if some Japanese or French or Dutch newspaper Your client is aware of that other name as plainly he was here. Why is it unfair to assume that that client is not acting ignorant? It's not like he's got to go check out Hindu. He knows that there's Hana Bank and he's adopted that name. I understand in our particular case they were aware of Hana Bank, the evidence says that. However, that's not true in every case and tacking is not an issue. You should pray that we don't publish. In any event, my point is I think that applying the Foreign Equivalence Doctrine in this particular instance would set a very bad precedent and that is the only law that says you can translate before you consider a mark. Thank you, Your Honors. Thank you very much and thank you both. The case was very well argued. It is submitted on the briefs. We'll get you an answer.
judges: Tallman, Clifton, Callahan